CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
per Danville
AUG 31 2009
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DEBORAH G. BAKOS, | ) | CASE NO. 4:09CV00002 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | By: B. Waugh Crigler |
| | ) | U. S. Magistrate Judge |
| Defendant. | ) | |
| | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's claims for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

On May 18, 2006, an Administrative Law Judge ("Law Judge") found that plaintiff suffered with the following severe impairments: a learning disorder, depression, chronic obstructive pulmonary disease and chronic back pain. (R. 78.) The Law Judge was of the belief that she did not have an impairment or combination of impairments which met or equaled a listed

impairment. (R. 80.) The Law Judge found that plaintiff maintained the residual functional capacity ("RFC") to perform unskilled sedentary work in a clear-air working environment. (*Id.*) The Law Judge determined that this RFC precluded plaintiff from performing her past relevant work, but that there were a significant number of jobs in the national economy that she could perform. (R. 83.) Thus, the Law Judge ultimately found that plaintiff was not disabled under the Act. (R. 84.)

Plaintiff appealed the Law Judge's May 18, 2006 decision to the Appeals Council. (R. 121.) On October 30, 2006, the Appeals Council found that the record contained insufficient evidence regarding plaintiff's neurological impairments and granted plaintiff's request for review.[1] (*Id.*) The Appeals Council vacated the Law Judge's decision and remanded the case for a *de novo* hearing. (R. 121-122.)

In his January 25, 2008 decision, the Law Judge noted that plaintiff alleged June 1, 2004 as the date of disability onset, and that she was insured for benefits through December 31, 2008. (R. 61.) He found that plaintiff had not engaged in substantial gainful activity during the relevant time period. (*Id.*) The Law Judge further found that she suffered from a learning disorder, depression, chronic obstructive pulmonary disease and back pain. (*Id.*) However, it was determined that plaintiff did not have an impairment or combination of impairments which met or equal any listed impairment. (R. 64.) The Law Judge found that, although plaintiff's medically determinable impairments reasonably could be expected to produce some of her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely credible." (R. 67.) He then found that plaintiff retained the

---

[1]The neurological evidence adduced on remand has not been made an issue in this appeal.

RFC to perform simple, unskilled sedentary work which allows for working indoors, avoiding exposure to extreme hot/cold, sitting/standing at her option and does not require working around dangerous machinery. (R. 65.) The Law Judge was of the belief that this RFC precluded plaintiff from performing her past relevant work.[2] (R. 68.) However, by application of the Medical-Vocational Guidelines and by reference to the testimony of the vocational expert, the Law Judge found that a significant numbers of jobs exist in the national economy which plaintiff could perform. (R. 69.) Thus, the Law Judge found she was not disabled under the Act. (R. 70.)

Plaintiff appealed the Law Judge's January 25, 2008 decision to the Appeals Council. (R. 7-10.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 7.) This action ensued.

Plaintiff's chief argument is that the Law Judge erred in failing to find she was disabled under Listing § 12.04. *See* 20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.04. (Pl's Brief, p. 11.) Plaintiff contends the medical expert ("ME") who testified at the first hearing opined that she met the requirements of Listing § 12.04, and that this evidence should be determinative. (*Id.*) While the undersigned gleans from this argument the notion that the Commissioner ought not be allowed to rise higher than the evidence of his own ME, neither the evidence in the record as a whole, nor the current regulatory and decisional authorities compel such a conclusion in this case.

The Commissioner's regulations and applicable circuit decisional authority provide a

---

[2]Plaintiff's past relevant work included security worker, parking/crossing guard, cashier, horse stable worker, kitchen worker, and lube tech worker at a truck stop. (R. 68.)

3

framework in which a Law Judge and the Commissioner must evaluate medical opinion evidence. 20 C.F.R. §§ 404.1527, 416.927. The following generally must be taken into account: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Hines v. Barnhart,* 453 F.3d 559, 563 (4th Cir. 2006); *Johnson v. Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005)). The regulations make clear that, even when the opinion of an ME is sought, the same rules for the Law Judge's evaluation of that evidence applies, and the "ultimate determination" of whether a claimant is disabled is for the Law Judge and Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Plaintiff bears the burden of proving she suffers an impairment which meets or equals the requirements of Listing § 12.04. *See Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995). In that connection, affective disorders which meet the requirements for a listed impairment are characterized by a disturbance of mood[3] and are accompanied by a full or partial manic or depressive syndrome. The required level of severity for these disorders is met when the requirements in both subsections A and B are satisfied, or when the requirements in C are satisfied. The regulation further provides:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or

---

[3]Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

4

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

I. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked[4] restriction of activities of daily living; or

---

[4]Under this Listing, "marked" is defined as "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). Furthermore, a "marked limitation may arise

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

The Law Judge found that plaintiff's mental impairment did not meet the criteria set forth in either subsection A or C. (R. 64-65.) In arriving at that conclusion, the Law Judge was not bound by the opinion of the ME at the first hearing for several reasons. First, while the ME seemed to testify that plaintiff met the requirements of subsection A, he did not know "exactly where she is with B." (R. 506.) Moreover, he was not in a position to render an opinion on subsection C without a further neurological review. (R. 507.) The record reflects that the ME did not submit any additional evidence once the neurological review was reported on remand. Thus, at best, the ME's opinion was premised on only part of the record evidence and stops short

---

when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately and effectively." *Id.*

6

of providing evidence that plaintiff's impairment met all the requirements for a listed impairment. In addition, there is other evidence in the record which substantially supports the Commissioner's final decision.

Plaintiff was evaluated by Franklin Eugene Russell, Ph.D. on March 7, 2007. (R. 393-400.) Dr. Russell noted that plaintiff had a fairly stable employment history, and he opined that it is possible she was able to function reasonably well in a menial job such as her work with horses. (R. 398-399.) Dr. Russell further opined that plaintiff suffered from an adjustment disorder with depressed mood and that she functioned with a global assessment of functioning ("GAF") of $60^5$. (R. 399.)

On July 31, 2004 plaintiff was evaluated by Debi Kipps-Vaughan, a licensed clinical psychologist. (R. 273-278.) The psychologist found that plaintiff suffered with the following: a reading disorder, a disorder of written expression, depression disorder NOS, and bipolar disorder NOS. (R. 276.) The psychologist opined that plaintiff's GAF was 50-65.[6] (*Id.*) In assessing her capacity to work, Dr. Kipps-Vaughan recommended assistance helping plaintiff with placement in a job which would utilize her strengths. (R. 275.) As of the date of her evaluation, Dr. Kipps-Vaughan noted that plaintiff had not received formal counseling, psychotherapy, and took no medication. (R. 273.) The psychologist believed that plaintiff suffered the effects of unaddressed mental health issues, but that with intervention, she would be successful in

---

[5] The GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed 2000) ( *DSM-IV* ). A GAF of 51-60 indicates only "moderate" symptoms or difficulties. *Id.*

[6] A GAF of 61-70 indicates "mild" symptoms or difficulties. *Id.*

7

establishing a more meaningful life existence. (R. 276.)

On October 5, 2004, following three visits with plaintiff, Dr. Kipps-Vaughan completed a Mental Status evaluation. (R. 292-296.) The psychologist noted that plaintiff had moved to the area some fifteen months prior to the evaluation, and that she was having difficulty finding employment which was suitable for her. (R. 292.) Dr. Kipps-Vaughan further noted that plaintiff had extensive household responsibilities for cleaning and maintenance, and that she appeared to pre-occupy herself with these household duties. (R. 293.)

Dr. Kipps-Vaughan referred plaintiff to Floyd Wiseman, M.D., a psychiatrist. (R. 374.) Dr. Wiseman opined that plaintiff suffered with recurrent major depression, severe and combined learning disabilities, with a GAF of 45 to 50. (R. 375.)

Alan D. Entin, Ph.D. evaluated plaintiff's records on November 11, 2004 and completed mental and psychiatric assessments. (R. 297-313.) Dr. Entin found that plaintiff suffered only mild restrictions on her activities of daily living, and that she experienced only moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (R. 311.) Dr. Entin noted that plaintiff had not experienced repeated episodes of decompensation, and that her mental limitations would not preclude her from meeting the basic demands of competitive work on a sustained basis. (R. 299, 311.) Ultimately, Dr. Entin opined that plaintiff could perform simple, routine, repetitive work in a stable environment. (R. 299.) On December 21, 2004, psychologist Robert P. Barrell affirmed Dr. Entin's findings. (R. 299, 301.)

Finding from this that the Commissioner's final decision is supported by substantial evidence, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion

for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

_August 31, 2009_
Date