IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DEBORAH S. BAKOS, ) | |
| ) | Case No. 4:09CV00002 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | By: Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendant. ) | |
| ) | |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending that the Defendant's Motion for Summary Judgment be granted and the Commissioner's final decision be affirmed. The Plaintiff filed objections to the Magistrate's Report and Recommendation. I have reviewed the Magistrate Judge's recommendation, Plaintiff's objections, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I will **ADOPT** the Magistrate's Report and Recommendation and **GRANT** the Defendant's Motion for Summary Judgment. I **AFFIRM** the Commissioner's final decision and **DISMISS** this case from the docket of this Court.

**I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On September 8, 2004, Plaintiff Deborah S. Bakos ("Plaintiff") filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and a Title XVI of the Social Security Act, respectively. *See* 42 U.S.C. §§ 401–433, 1381–1383f. In her application, Plaintiff alleged she had been disabled since June 1, 2004, due to "tumor[s] on anus and mouth, cannot sleep, dyslexic, secondary mental problems." (R. 147, 205.) Pursuant to the authority granted by 42 U.S.C. § 421, Virginia Disability Determination

Services (a state agency) initially determined that Plaintiff was not disabled. (*See* R. 71–72.) Upon Plaintiff's request, the state agency reviewed her application again but reached the same conclusion. (R. 91–95.) Plaintiff requested review by an administrative law judge ("ALJ") who held a hearing on January 24, 2006, where plaintiff, who was represented by counsel, testified. (R. 96, 471–495.) A vocational expert ("VE"), Dr. Robert Ballantyne, and a reviewing physician, Dr. Marvin Gardner, testified as well. (R. 502–520.) Dr. Gardner testified as a medical expert. (R. 505; *see* R. 111.) At the initial hearing, Dr. Gardner testified that the Plaintiff "probably [met] 12.02, organic mental disorder, under 5, disturbance of mood under the A section. And she [met] criteria A also of 12.04."[1] (R. 506.)

In his ruling issued May 18, 2006, the ALJ determined Plaintiff suffered from a learning disorder, depression, chronic obstructive pulmonary disease, and chronic back pain, but was not disabled as defined in the Social Security Act ("the Act").[2] (*See* R. 73-84.) Plaintiff requested a review of the ALJ's decision and, on October 30, 2006, the Appeals Council vacated the decision and ordered that the case be remanded for further development. (R. 118–22.)

On remand, the ALJ held another hearing where the Plaintiff, represented by counsel, testified along with a different VE, Dr. Gerald Wells. (R. 435–465.) In addition, two new neurological reports and two new psychological evaluations were admitted and considered by the ALJ. (R. 444.) Again, on January 25, 2008, the ALJ determined Plaintiff suffered from a

---

[1] The numbers "12.02" and "12.04" refer to denoted affective disorders in the Code of Federal Regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, §§ 12.02, 12.04. In order to qualify as disabled under one of the listed conditions, a patient must meet the criteria listed in *both* parts A and B *or* meet the criteria listed in part C. *See id.* § 12.04. Dr. Gardner testified that Plaintiff met part A but was unsure as to where she would fall in the B criteria. (R. 506.) He also testified that Plaintiff met the criteria listed for C(2), but would require further neurological testing to confirm that diagnosis. (R. 507 ("Now, if you wanted to get that absolutely confirmed, you'd have to go do some neurological testing.").)

[2] For someone under the age of 55, like Plaintiff, the Social Security Act defines "disabled" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2008); *see also id.* § 416(i)(1) (2008).

"learning disorder, depression, chronic obstructive pulmonary disease and chronic back pain," but was not disabled. (R. 64; *see generally* R. at 56–70.) After exhausting all other administrative remedies, Plaintiff filed suit in this court on February 2, 2009. (*See* Compl. ¶ 1– 5.) Her case was assigned to Magistrate Judge B. Waugh Crigler, who issued his Report and Recommendation on August 31, 2009, after considering motions for summary judgment filed by both parties. Magistrate Judge Crigler recommended that Defendant's Motion for Summary Judgment be granted and the Commissioner's final decision be affirmed. (Rep. and Recom. 8–9 [hereinafter "R & R"].) Plaintiff's argument for summary judgment—and the basis for her objection to Magistrate Judge Crigler's recommendation—is that the ALJ erred when he failed to give dispositive weight to Dr. Gardner's opinion from the first hearing. (*See* Pl.'s Obj. to R & R 5; Pl.'s Br. 11.) Magistrate Judge Crigler disagreed, noting there was sufficient evidence to support the ALJ's ultimate conclusion. (R & R 8.) Plaintiff timely filed her objections and, again, her sole basis appears to be that the ALJ's conclusion differed from that of the medical expert, Dr. Gardner.[3] (Pl.'s Obj. to R & R 5.)

## II.   STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d

---

[3] Plaintiff's argument is that "the Law Judge stated that he agreed with the medical expert who had testified the plaintiff met the listing [in the C.F.R.], not once but twice. . . . This case deserves a full review." (Pl.'s Obj. to R & R 5.) From this I conclude, as did Magistrate Judge Crigler, that the basis of the objection was that the ALJ failed to give controlling, dispositive weight to Dr. Gardner's opinion at the first hearing. (*See* R & R 3.)

171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545; *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that role of the ALJ, not the VE, is to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927. Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[4]" *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

## III. DISCUSSION

Plaintiff argues the ALJ erred by failing to accord greater, if not dispositive, weight to the opinion of the medical expert, Dr. Marvin Gardner. The defendant counters that the medical expert's opinion is not entitled to controlling weight. Under the Commissioner's regulations, only "treating physician" opinions may be entitled to controlling weight, and then only when the

---

[4] Or the secretary's designate, the ALJ. *See Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

requisite conditions are met.[5]  (*See* Def.'s Br. in Supp. for Mot. Summ. J. 17 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).)  Plaintiff cites no legal support for her argument; she merely references the C.F.R. section to which Dr. Gardner referred in the first hearing.  (*See* Pl.'s Br. in Supp. of Mot. Summ. J. 11.)

First and foremost, the Commissioner and the ALJ are rarely, if ever, required to accept one doctor's opinion of disability over evidence to the contrary.  Contested issues of medical conclusions are left for the Commissioner and the ALJ to solve within the legal framework of who or what qualifies as disabled.  *See* 20 C.F.R. § 404.1527(c) ("After we review all of the evidence relevant to your claim, including medical opinions, *we* make findings about what the evidence shows." (emphasis added)); 20 C.F.R. § 404.1527(e)(1) (noting that the determination of whether a claimant is disabled is reserved for the Commissioner or ALJ and is an administrative finding, *not* a medical opinion).  While Dr. Gardner is certainly entitled to his opinion, the ALJ may agree or disagree, so long as his conclusion is supported by substantial evidence.  In fact, if a physician's opinion is "inconsistent with other substantial evidence, it should be accorded significantly less weight."  *Craig*, 76 F.3d at 590.

In the present case, the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.  Dr. Deborah Kipps-Vaughn, a psychologist who treated the plaintiff, found that Plaintiff had average cognitive functioning and demonstrated a specific strength in visual and perceptual organization.  Dr. Kipps-Vaughn also found that, although she did suffer from

---

[5] Controlling weight may be given to a treating physician's opinion "[i]f [the Social Security Administration or ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the complainant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. 404.1527(d)(2). I point this out to illustrate, once again, that the final determination of "disabled" under the Act remains with the Commissioner and not with a physician.  If the Commissioner chooses to give controlling weight to a treating physician, his or her opinion must be supported, just like the ALJ's decision, by "substantial evidence in [the] case record . . . ."  *Id.*  Additionally, the ALJ is authorized to give greater weight to non-treating physicians over the opinions of treating physicians if there is persuasive contrary evidence.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (1992); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (1983).

depression, Plaintiff would "be successful with establishing a more meaningful life existence" with treatment. Dr. Kipps-Vaughn noted that Plaintiff was well-oriented; she had an adequate attention span; she had an average to adequate fund of information; she had no problems organizing her thoughts; she had an average capacity for abstract reasoning; and she could complete tasks.

Dr. C. M. Patel, who treated Plaintiff once, noted that Plaintiff was in no overt physical distress, was alert and oriented, had lucid thoughts, and was self-composed. He additionally noted that Plaintiff believed her psychological symptoms to be at least partly secondary to her financial situation. (*Id.*)

Dr. Alan Entin, a state-agency reviewing psychologist, reviewed Plaintiff's medical records and opined Plaintiff could "perform simple, routine, repetitive work in a stable environment. She [could] understand, retain, and follow simple job instructions, i.e., perform one and two step tasks." (R. 299.) He noted Plaintiff had not experienced repeated episodes of decompensation and that her mental limitations would not preclude her from meeting the basic demands of competitive work on a sustained basis.[6] Importantly, Dr. Entin noted that the evidence presented to him did not establish the presence of any of the "C" criteria in the listings in the C.F.R.[7] Furthermore, none of Plaintiff's symptoms satisfied the functional criteria to qualify as anything in the "B" listings.

Lastly, the Plaintiff's own admissions indicate that she could engage in unskilled, sedentary work in a clean-air environment, as the ALJ determined. Plaintiff admitted to her doctors and in her application for benefits that she does extensive work around the house, such as

---

[6] Dr. Entin adopted Dr. Kipps-Vaughn's conclusions as well, noting that both of their findings were consistent in regard to Plaintiff's residual functional capacity. (*See* R. 299, 273–277.)

[7] Dr. Gardner testified in 2006 that further testing would need to be done to confirm the presence or absence of "C" criteria. (R. 507.) Dr. Entin's report was prepared in 2004.

cooking, cleaning, and working in the yard. She washes dishes, cleans clothes, makes beds, shops for groceries, feeds and waters her chickens daily, and mows the lawn. She drives a car, goes in and out "all the time," and is even able to go out by herself. Based on her own daily activities, in addition to the findings of several physicians, there is substantial evidence to support the ALJ's determination that Plaintiff is not disabled within the meaning of the Act.

Furthermore, even if the Commissioner, the ALJ, or I *were* bound to accept Dr. Gardner's testimony as dispositive, a finding of disability would not necessarily follow. In order to qualify as disabled under one of the listed conditions, a patient must meet the criteria listed in *both* parts A and B *or* meet the criteria listed in part C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, § 12.04. Dr. Gardner testified that Plaintiff met part A but was unsure as to where she would fall in the B criteria. He also testified that Plaintiff met the criteria listed for C(2), but would require further neurological testing to confirm that diagnosis. Further neurological testing did not indicate that Dr. Gardner's diagnosis was correct.[8] Therefore, based on Dr. Gardner's testimony, she would not qualify as disabled under parts A and B because Dr. Gardner was unsure where she would fall on B, an indispensable element of the finding. Additionally, upon further neurological testing, no medical opinion was offered to connect the testing with any of the criteria listed in part C. Without any evidence to support a finding of disability under C, the ALJ was not bound by Dr. Gardner's pre-testing opinion.

## IV.   CONCLUSION

As the standard of review requires, I am precluded from judging the evidence in this case in the way a finder of fact would, and instead must review the record before this Court and

---

[8] Dr. Entin concluded, prior to the subsequent testing, that there was no evidence to support a finding that any of the "C" criteria was present. (R. 312.) Again, on review, it is not my job to re-weigh conflicting evidence. *See Mastro*, 270 F.3d at 176. When there is a reasonable conflict in the evidence, the responsibility for that decision rests with the ALJ. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).

determine whether substantial evidence supports the decision of the Commissioner. For the reasons given here, I find that substantial evidence supports the ALJ's decision. Therefore, I will **ADOPT** the Magistrate Judge's Report and Recommendation and **DENY** the Plaintiff's objections. I will **GRANT** the Defendant's Motion for Summary Judgment and **AFFIRM** the Commissioner's final decision. This case shall be **DISMISSED** from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 25th day of September, 2009.

s/Jackson L. Kiser
Senior United States District Judge